[Cite as *State v. Williams*, 2012-Ohio-5873.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 26014 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| EDWARD WILLIAMS | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 09 10 3223 (B) |

DECISION AND JOURNAL ENTRY

Dated: December 12, 2012

CARR, Judge,

{¶1} Defendant-Appellant, Edward Williams, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms in part and reverses in part.

I.

{¶2} Williams was indicted on two counts of grand theft and two counts of tampering with records after he received benefits from the Ohio Department of Job and Family Services and the United States Social Security Administration. The State alleged that Williams was not entitled to the benefits he had received due to his having misrepresented certain information on his applications and supplements to his applications for benefits. Williams pleaded not guilty to the charges and requested a jury trial. Because a related case in which Williams was involved had been highly publicized, the court requested a large pool of prospective jurors.

{¶3} On the morning of trial, sixty prospective jurors reported to the courtroom of the judge presiding over the trial. Noting that the entire courtroom would likely be needed to

accommodate the jury pool, the judge asked a lone spectator in the courtroom to step out before the prospective jurors entered. Subsequently, the trial commenced, and the jury found Williams guilty on all four counts. The trial court sentenced him to one year in prison. The court further ordered Williams to pay restitution in the amount of $36,023.87 to the Ohio Department of Job and Family Services and $64,900 to the United States Social Security Administration. Williams appealed from the trial court's judgment.

{¶4} Williams died in prison before this Court could hear his appeal. Williams' appointed attorney then moved to dismiss the appeal, dismiss the trial court proceedings, and vacate Williams' convictions as a result of his passing. The State opposed the motion and asked this Court to substitute Williams' appointed counsel in place of Williams for purposes of hearing the appeal. *See State v. McGettrick*, 31 Ohio St.3d 138 (1987). This Court granted the State's motion by way of journal entry. *State v. Williams*, 9th Dist. No. 26014 (June 18, 2012). As such, the appeal will proceed as if Williams' death had not occurred.

{¶5} Williams' appeal is now before this Court and raises seven assignments of error for our review. For ease of analysis, we combine several of the assignments of error.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT COMMITTED PLAIN, REVERSIBLE, AND STRUCTURAL ERROR WHEN IT PARTIALLY CLOSED THE COURTROOM DURING *VOIR DIRE* IN VIOLATION OF WILLIAMS' FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO A PUBLIC TRIAL AS GUARANTEED BY THE FIRST, SIXTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION AND ARTICLE I, §10 OF THE OHIO CONSTITUTION, AND *PRESLEY V. GEORGIA*, 130 S.CT. 721, 175 L.ED.2D 675 (2010).

## ASSIGNMENT OF ERROR II

WILLIAMS WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL WHEN HIS TRIAL COUNSEL FAILED TO OBJECT THAT THE TRIAL COURT'S PARTIAL CLOSING OF THE COURTROOM DURING *VOIR DIRE* VIOLATED WILLIAMS' RIGHT TO A PUBLIC TRIAL AS GUARANTEED BY THE FIRST, SIXTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION AND ARTICLE I, §10 OF THE OHIO CONSTITUTION, AND *PRESLEY V. GEORGIA*, 130 S.CT. 721, 175 L.ED.2D 675 (2010).

{¶6} In his first assignment of error, Williams argues that the trial court committed either structural or plain error by partially closing the courtroom during voir dire. In his second assignment of error, Williams argues that he received ineffective assistance of counsel because his counsel failed to object to the partial closure of the courtroom. As set forth below, we reject both propositions.

{¶7} The Sixth Amendment to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution guarantee an accused the right to a public trial. *State v. Lane*, 60 Ohio St.2d 112, 119 (1979). The "Sixth Amendment right to a public trial extends to the voir dire of prospective jurors." *Presley v. Georgia*, 558 U.S. ___, 130 S.Ct. 721, 724 (2010). Moreover, "the right * * * cannot be waived by the defendant's silence." *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, ¶ 81. Absent proof in the record that the defendant somehow consented to the closing of the trial, an appellate court must consider a defendant's claim that the court violated his public trial right. *See id.* at ¶ 81-82. *Compare State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, ¶ 54-59 (error as to February 5th courtroom closure waived when counsel had objected to February 4th courtroom closure, but not the February 5th closure); *State v. Bayless*, 48 Ohio St.2d 73, 110-111 (1976), *vacated on other grounds*, 438 U.S. 911 (1978) (defense agreed to closure that "was primarily for the benefit of the defense"). "The violation of the right to a public trial is considered structural error and not subject to harmless-error analysis."

*Drummond* at ¶ 50. "Before discussing structural error, however, an appellate court must first find that a constitutional error has occurred." *State v. Dovala*, 9th Dist. No. 05CA008767, 2007-Ohio-4914, ¶ 10.

{¶8} Williams contends that the trial court committed structural error by excluding his daughter from the courtroom during voir dire. The only evidence Williams points to in support of his argument is a ruling that the court made on the record directly before the prospective jurors were to be brought into the courtroom. The court stated:

> The only thing is, I see [Williams'] daughter in the back. The problem is I think every seat is going to be taken by jurors. So, Miss Bolar-Williams, I would ask that you step out and have a seat. There [are] some round tables out there. Quite frankly, I don't think there [are] going to be any additional seats during the jury selection process, but why don't you go out and have a seat, and then we will see.

Williams did not object to the trial court's ruling, and no further discussions about the ruling took place on the record. According to Williams, "[a]t no time thereafter during the *voir dire* selection of the jury did [the judge] ever permit [his] daughter back into the courtroom to observe the selection of the jury." That fact, however, is not in evidence. It is entirely unclear from the record whether spectators were actually excluded from the courtroom once the prospective jurors arrived. The judge's ruling was only that she *thought* there might not be enough seats once the jurors arrived, but when the jurors got there "[they] w[ould] see." The record is devoid of any additional evidence.

{¶9} The cases that Williams cites in support of his position all involve definitive courtroom closures. That is, no question existed in the record in those cases that courtroom closures actually occurred. *See, e.g., Presley*, 558 U.S. ___, 130 S.Ct. 721 (court ordered courtroom closed for voir dire and specified that spectators could return at the start of trial); *Waller v. Georgia*, 467 U.S. 39 (1984) (court ordered closure over objection that seven-day

suppression hearing be closed to the public); *Lane*, 60 Ohio St.2d 112 (trial occurred in "improvised courtroom" in maximum security penitentiary). Moreover, in the case upon which Williams primarily relies, *Presley v. Georgia*, the defendant moved for a new trial so that the court could take additional evidence on the closure issue. There, the trial court had closed the courtroom for voir dire on the basis that each row would be occupied by potential jurors and it would be inappropriate to allow spectators to "intermingle" with members of the jury pool. *Presley* at 722. In moving for a new trial, the defendant went so far as to present evidence as to the size of the courtroom and the number of seats that would have been available once the potential jurors entered. *Id.* No such evidence exists in this case. Unlike the cases upon which Williams relies, the record here is inconclusive with regard to whether spectators were or were not allowed in the courtroom once the potential jurors arrived.

{¶10} The trial court here essentially issued a preliminary ruling, as its ruling hinged upon whether there would, in fact, be room for spectators in the courtroom once the potential jurors arrived. It is entirely plausible that after the potential jurors arrived, spectators were able to enter the courtroom. The evidence in the record is simply inconclusive. Although Williams need not have objected to the court's ruling to raise the issue on appeal, *see Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, at ¶ 81-82, there is not enough evidence in the record from which one can conclusively deduce that a closure actually occurred. *See State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, ¶ 101-102 (defendant failed to establish courtroom closure or that any spectators were actually excluded). Williams' argument essentially asks this Court to engage in speculation. *See State v. Patel*, 9th Dist. No. 24024, 2008-Ohio-4692, ¶ 43 ("[T]his Court will not rely upon pure speculation in determining whether an error occurred."). We are unwilling to conclude that the trial court's preliminary ruling, without more, definitively resulted in a

courtroom closure. Williams has not shown that a constitutional error actually occurred. As such, this Court need not engage in a structural error analysis. *See Dovala*, 2007-Ohio-4914, at ¶ 10-13. Williams' first assignment of error is overruled.

{¶11} Williams also argues that he received ineffective assistance of counsel because his trial counsel failed to object to the closure of the courtroom. In order to demonstrate ineffective assistance of counsel, a defendant most show (1) deficiency in the performance of counsel "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) that the errors made by counsel were "so serious as to deprive the defendant of a fair trial[.]" *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A defendant must demonstrate prejudice by showing that, but for counsel's errors, there is a reasonable probability that the outcome of the trial would have been different. *Id.* at 694. As previously noted, a defendant need not object to preserve a claim of structural error on appeal when a trial court erroneously orders the proceedings closed. *See Bethel* at ¶ 81-82. *But see Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, at ¶ 54-59 (error can be waived if circumstances support a waiver). The problem here is that the record does not contain sufficient evidence to show that a courtroom closure actually occurred. Williams fails to explain how his counsel's objection to the trial court's preliminary ruling would have remedied that problem. *See* App.R. 16(A)(7). Accordingly, he has not shown that he was prejudiced by his trial counsel's failure to object to the trial court's preliminary ruling. Williams' second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN FAILING TO PROVIDE WILLIAMS WITH HIS RIGHT TO ALLOCUTION PRIOR TO THE IMPOSITION OF HIS PRISON SENTENCE IN VIOLATION OF R.C. 2929.19(A) AND CRIM.R. 32(A).

{¶12}  In his third assignment of error, Williams argues that the trial court denied him his right of allocution before it imposed his sentence.  We disagree.

{¶13}  Pursuant to Crim.R. 32(A)(1), a trial court shall "[a]fford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment."  *See also* R.C. 2929.19(A) (court shall hold sentencing hearing at which it asks the offender whether he "has anything to say as to why sentence should not be imposed upon [him]").  The rule "requires a trial court to afford a defendant an opportunity to speak before the court imposes sentence."  *State v. Maynard*, 9th Dist. No. 07CA0116-M, 2009-Ohio-282, ¶ 38.

{¶14}  Before the court orally pronounced Williams' sentence in open court, the court spoke to Williams and his attorney.  The following exchange took place:

> THE COURT: * * * Is there anything either the defendant or his counsel * * * would like to say?
>
> [DEFENSE COUNSEL]: Your Honor, I would like to speak.  Mr. Williams and I did speak prior to this.  In the event he was to be found guilty, I would ask the Court to -- I would have asked the Court to allow him to be left out of jail and that he would be sentenced at a later date.
>
> THE COURT: All right.  Thank you.  Mr. Williams, is there anything you want to say to the Court?
>
> [WILLIAMS]: I said it already.  You don't want to hear it.
>
> THE COURT: Is there anything additional you want to say?
>
> [WILLIAMS]: There is nothing I can say.  Everything I said has been denied.

The court then began to explain the rationale it employed in reaching its sentencing decision.  Williams interrupted the court and interjected his belief that he had accepted benefits because he "thought [he] was disabled" and "wasn't able to take care of [himself]."  After the court orally

imposed its sentence, Williams also interjected that he felt it was unfair that he also had a case in federal court.

{¶15} The trial court personally addressed Williams and asked multiple times whether he had anything to say. Both the Ohio Supreme Court and this Court have recognized that a trial court complies with a defendant's right of allocution when it personally addresses the defendant and asks whether he has anything to say. *State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, ¶ 192-193; *State v. Vickers*, 9th Dist. No. 01CA007928, 2002-Ohio-3628, ¶ 34. Williams was given repeated opportunities to personally address the court. Moreover, even after he indicated that he had nothing to say, he was able to interject several statements while the trial court explained its sentencing rationale and after the court orally pronounced his sentence. The fact that the interjections did not occur before the court began to pronounce its sentence is inapposite. "[A]lthough the court set forth the terms of [Williams'] sentence in open court, it did not journalize [his] sentence until much later." *State v. Brown*, 9th Dist. No. 25287, 2011-Ohio-1041, ¶46, citing *Maynard* at ¶ 45 ("[Defendant's] sentence was not finalized until the trial court filed its sentencing entry and, up until that time, anything it said about what that sentence would be was tentative."). The record reflects that Williams was afforded his right of allocution. His third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN ORDERING WILLIAMS TO PAY RESTITUTION WITHOUT CONSIDERING WILLIAMS' PRESENT AND FUTURE ABILITY TO PAY AS REQUIRED UNDER R.C. 2929.19(B)(5).

**ASSIGNMENT OF ERROR V**

WILLIAMS WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL WHEN HIS TRIAL COUNSEL FAILED TO OBJECT TO THE IMPOSITION OF RESTITUTION WITHOUT CONSIDERING WILLIAMS' PRESENT AND FUTURE ABILITY TO PAY.

{¶16} In his fourth assignment of error, Williams argues that the trial court committed plain error when it ordered him to pay restitution without first considering his present and future ability to pay it. In his fifth assignment of error, Williams argues that he was denied the effective assistance of counsel because his counsel failed to object to the court's error in imposing restitution without first considering his ability to pay it.

{¶17} "Before imposing a financial sanction under [R.C. 2929.18] or a fine under [R.C. 2929.32], the court shall consider the offender's present and future ability to pay the amount of the sanction or fine." R.C. 2929.19(B)(5).[1] "[T]here are no express factors that must be taken into consideration or findings regarding the offender's ability to pay that must be made on the record." *State v. Martin*, 140 Ohio App.3d 326, 327 (4th Dist.2000). Even so, the record must reflect that the court actually considered the defendant's ability to pay. *Id. Accord State v. Lewis*, 2d Dist. No. 2011-CA-75, 2012-Ohio-4858, ¶ 9; *State v. McQuillen*, 5th Dist. No. 12CA014, 2012-Ohio-4953, ¶ 11; *State v. Dahms*, 6th Dist. No. S-11-028, 2012-Ohio-3181, ¶ 16. A trial court commits plain error by ordering a defendant to pay restitution without first considering his ability to pay. *State v. Andrews*, 1st Dist. No. C-110735, 2012-Ohio-4664, ¶ 32.

{¶18} During the sentencing hearing, the trial court only inquired as to whether Williams would be able to afford an attorney on appeal. The court noted that Williams appeared

---

[1] Subsection (B)(5) of R.C. 2929.19 is identical to Former R.C. 2929.19(B)(6).

to have a home, although there was testimony that it was encumbered by a substantial mortgage. Williams informed the court that he only had $10 in his checking account. The court then concluded that appellate counsel would be appointed, but that Williams would be required to reimburse the county for his attorney fees if further investigation disclosed his ability to pay his attorney fees. No pre-sentence investigation was completed, and the trial court never set forth in its sentencing entry that it had considered Williams' present and future ability to pay before imposing restitution.

{¶19} The record in this case does not support the conclusion that the court considered Williams' ability to pay restitution before ordering him to pay it. A defendant's ability to pay for appellate counsel is not synonymous with his ability to pay a retainer fee for counsel. *Id.* at ¶ 29 ("An offender's ability to pay a fine over a period of time is not equivalent to the ability to pay legal counsel a retainer fee at the outset of the criminal proceedings."). No discussion took place on the record about Williams' ability to pay restitution, and no further financial information could have been obtained from a pre-sentence investigation report, as none was completed. Further, the trial court did not expressly state at the hearing or in its sentencing entry that it had considered Williams' ability to pay before it ordered restitution. "Because the record is completely silent on the matter, the trial court committed plain error in ordering [Williams] to pay * * * restitution." *Id.* at ¶ 32.

{¶20} Although Williams is deceased, several state courts have held that an order to pay restitution survives the death of the defendant. *See, e.g., People v. Daly*, Colo.App. No. 10CA0580, 2011 WL 2308587 (June 9, 2011); *People v. Peters*, 449 Mich. 515, 537 N.W.2d 160 (1995); *Matter of Estate of Vigliotto*, 178 Ariz. 67, 870 P.2d 1163 (1993); *State v. Christensen*, 866 P.2d 533 (Utah 1993). Moreover, numerous Ohio courts have recognized that,

upon the substitution of a deceased party pursuant to App.R. 29(A), the case must proceed as if the death had not occurred. *See, e.g., State v. Meade*, 12th Dist. No. CA2009-07-024, 2010-Ohio-2435 (remand for hearing on decedent's sex offender classification); *State v. Sims*, 127 Ohio App.3d 603 (2d Dist.1998) (remand for hearing and determination of suppression-based issues); *State v. Williams*, 75 Ohio App.3d 102 (10th Dist.1991) (remand for hearing and determination of suppression-based issues). As such, Williams' fourth assignment of error is sustained and the court's order of restitution is reversed in light of that determination. The matter, however, will be remanded to the trial court for further proceedings.

{¶21} Williams also argues that he received ineffective assistance of counsel because his counsel did not object when the trial court imposed restitution without first considering his ability to pay it. Based on our resolution of Williams' fourth assignment of error, his ineffective assistance argument is moot and we decline to address his fifth assignment of error. App.R. 12(A)(1)(c).

### ASSIGNMENT OF ERROR VI

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN ASSESSING COURT COSTS AGAINST WILLIAMS WHEN IT DID NOT IMPOSE THOSE COSTS IN OPEN COURT AND WITHOUT COMPLYING WITH R.C. 2947.23(A).

{¶22} In his sixth assignment of error, Williams argues that the trial court erred by assessing court costs against him without first complying with the notification requirements of R.C. 2947.23(A). We agree.

{¶23} R.C. 2947.23(A) provides in relevant part:

(A)(1) In all criminal cases, including violations of ordinances, the judge or magistrate shall include in the sentence the costs of prosecution, including any costs under section 2947.231 of the Revised Code, and render a judgment against the defendant for such costs. At the time the judge or magistrate imposes

sentence, the judge or magistrate shall notify the defendant of both of the following:

(a) If the defendant fails to pay that judgment or fails to timely make payments towards that judgment under a payment schedule approved by the court, the court may order the defendant to perform community service in an amount of not more than forty hours per month until the judgment is paid or until the court is satisfied that the defendant is in compliance with the approved payment schedule.

(b) If the court orders the defendant to perform the community service, the defendant will receive credit upon the judgment at the specified hourly credit rate per hour of community service performed, and each hour of community service performed will reduce the judgment by that amount.

The statute requires both that the trial court (1) notify the defendant at the time of sentencing that costs will be assessed so that he has an opportunity to seek a waiver, and (2) notify the defendant that his failure to pay the costs could result in imposition of community service, but that he would receive credit toward the costs from any community service imposed. *State v. Ross*, 9th Dist. No. 25778, 2012-Ohio-1389, ¶ 28; *State v. Stallworth*, 9th Dist. No. 25461, 2011-Ohio-4492, ¶ 32. *See also State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, ¶ 20-24.

{¶24} The record reflects that the trial court did not discuss costs at the sentencing hearing. Williams was not informed of any of the statutory notifications mandated by R.C. 2947.23(A). Nevertheless, the court imposed costs upon him in its sentencing entry. The court erred by doing so. *See Ross* at ¶ 28; *Stallworth* at ¶ 32. Accordingly, Williams' argument has merit.

{¶25} As previously noted, this case must proceed as if Williams' death had not occurred. Even after the defendant in a criminal case dies, "the matter of costs remains." *McGettrick*, 31 Ohio St.3d at 141, fn. 4, quoting *State v. Jones*, 220 Kan. 136, 137, 551 P.2d 801 (1976). As such, Williams' sixth assignment of error is sustained, and the matter will be remanded to the trial court for further proceedings.

**ASSIGNMENT OF ERROR VII**

THE CUMULATIVE EFFECT OF THE TRIAL COURT'S ERROR DENIED WILLIAMS A FAIR TRIAL.

**{¶26}** In his seventh assignment of error, Williams argues that cumulative errors in the proceedings deprived him of his constitutional right to a fair trial. We disagree.

**{¶27}** Cumulative error exists only where the errors during trial actually "deprive[d] a defendant of the constitutional right to a fair trial." *State v. DeMarco*, 31 Ohio St.3d 191 (1987), paragraph two of the syllabus. "[T]here can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial." *State v. Hill*, 75 Ohio St.3d 195, 212 (1996), quoting *United States v. Hasting*, 461 U.S. 499, 508-509 (1983). Moreover, "errors cannot become prejudicial by sheer weight of numbers." *Hill*, 75 Ohio St.3d at 212.

**{¶28}** After reviewing the record, we cannot say that Williams' trial was plagued with numerous errors or that his constitutional right to a fair trial was violated. Therefore, his seventh assignment of error is overruled.

III.

**{¶29}** Williams' first, second, third, and seventh assignments of error are overruled, and his fifth assignment of error is moot. Williams' fourth and sixth assignments of error are sustained. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment affirmed in part,<br>reversed in part,<br>and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

DONNA J. CARR
FOR THE COURT

WHITMORE, P. J.
CONCURS.

BELFANCE, J.
CONCURRING.

{¶30} I concur with most of the majority opinion. However, I do not join in the dicta in ¶ 20 and ¶ 25. Because Mr. Williams passed away after the trial court had ordered restitution, it had not considered the effect his death had on its ability to impose the restitution, and the trial court should consider this issue in the first instance.

APPEARANCES:

NEIL P. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.