[Cite as *State v. Mavrakis*, 2015-Ohio-4902.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| --- | --- | --- |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 27457 |
| --- | --- |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| TONY A. MAVRAKIS | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 2013 10 2872 |

DECISION AND JOURNAL ENTRY

Dated: November 25, 2015

WHITMORE, Judge.

{¶1} Appellant, Tony A. Mavrakis, appeals his conviction and sentence from the Summit County Court of Common Pleas. This Court affirms.

I

{¶2} This case involves the actions Mavrakis took after he and Robert G. Fye had a dispute apparently involving the ownership of a car. Mavrakis, who was under a lifetime license suspension, was pulled over while driving the car. As a result, the car was towed. Fye, who was concerned there might "be an issue," sought and received police assistance to retrieve the keys from Mavrakis in order to claim the car from the tow yard.

{¶3} Later that day, Mavrakis went to Fye's apartment with a bayonet demanding that the car be returned to him. Fye was not home, but his grandmother and uncle were. Mavrakis beat on the door with the bayonet for approximately two minutes. At some point, the uncle

turned the latch to the lock. Mavrakis, then, pushed open the door and entered the apartment with "rage in his eyes."

{¶4} He demanded that the grandmother call Fye. She claimed that she was unable to do so because she did not have a phone. Mavrakis was swinging the bayonet and smashing things including a television set, glass coffee table, shelving, pictures and nicknacks. While this was happening, the grandmother secretly passed her cell phone to the uncle who exited the apartment and called 911. The uncle waited in hiding until the police arrived.

{¶5} Before the police arrived, Mavrakis left the apartment and called Fye's sister. During that call, Mavrakis threatened that, if Fye wanted his grandmother and uncle to live, he had better bring the car back. He further threatened, "I'm gonna and kill your m***f***ing dad, too, if he don't bring my m***f***ing car back."

{¶6} Mavrakis proceeded to a muffler shop where Fye's father worked and above which Fye's father lived. Several people, including Fye's sister, were present at the muffler shop. Mavrakis entered through the bay door, slashed a garbage can, and ordered Fye's father to "[c]all Robert [because] I want my car back." Mavrakis further screamed at Fye's father that he would "cut [his] f***ing head off if [he didn't] call [his] son." Fye's father grabbed a gun and warned Mavrakis that he would kill him if Mavrakis continued to come after them with the bayonet. Mavrakis backed out of the muffler shop and Fye's father fired a warning shot.

{¶7} After he was arrested, Mavrakis remarked that he would have killed Fye if he had been there. Mavrakis also stated, "I'm going to do some time, but when I get out, I will kill him." At that point, Mavrakis' demeanor was "matter-of-fact" according to the police officer who heard the remarks.

{¶8} Mavrakis was charged with aggravated burglary, vandalism, and two counts of aggravated menacing for his actions at the apartment. He was charged with felonious assault and breaking and entering for his conduct at the muffler shop.

{¶9} Following a jury trial, Mavrakis was found guilty of the charges arising out of his actions at the apartment. He was found not guilty of the charges relating to the muffler shop. The court ordered a presentence investigation report. According to the report, Mavrakis had prior convictions for, inter alia, felonious assault and aggravated vehicular homicide. The trial court merged the vandalism and aggravated menacing convictions into the aggravated burglary conviction for purposes of sentencing. The court sentenced Mavrakis to seven years in prison for aggravated burglary, which it found to be a mandatory term.

{¶10} Mavrakis appeals raising six assignments of error for our review.

<u>Assignment of Error Number One</u>

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT FOUND MR. MAVRAKIS GUILTY OF AGGRAVATED BURGLARY BECAUSE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT SUCH FINDINGS.

{¶11} In his first assignment of error, Mavrakis argues that there was insufficient evidence to convict him of aggravated burglary because Fye's uncle unlocked the door that Mavrakis opened to enter the apartment. We disagree.

{¶12} The sufficiency of the evidence is a question of law, which we review de novo. *See State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Our review is to determine whether the State met its burden of production at trial. *State v. Glunt*, 9th Dist. Medina No. 13CA0050-M, 2014-Ohio-3533, ¶ 5. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential

elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶13} Mavrakis was convicted of aggravated burglary in violation of R.C. 2911.11(A)(2). That section provides:

> No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if * * * [t]he offender has a deadly weapon or a dangerous ordnance on or about the offender's person or under the offender's control.

R.C. 2911.11(A)(2). Mavrakis argues that the State's evidence was insufficient to establish that he trespassed in the apartment by force, stealth, or deception.

{¶14} "'Force' means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). Opening an unlocked door is sufficient to satisfy the force element of the statute. *State v. Shelly*, 9th Dist. Wayne No. 10CA0032, 2011-Ohio-4301, ¶ 12, citing *State v. Shirley*, 9th Dist. Summit No. 20569, 2002 WL 5177, *2 (Jan. 2, 2002).

{¶15} The trespass element is met when a person "without privilege to do so * * * [k]nowingly enter[s] or remain[s] on the land or premises of another." R.C. 2911.10, R.C. 2911.21(A)(1). A privilege is "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." R.C. 2901.01(A)(12).

{¶16} In the present case, Fye's grandmother testified that Mavrakis beat on the glass door to the apartment with what she thought was a machete. She later learned it was actually a bayonet. She further testified that, after approximately two minutes, her schizophrenic son

turned the latch to the lock. Her son, Fye's uncle, testified that he unlocked the door because he "was afraid of [Mavrakis] busting the glass and knocking the window out of the glass." According to the grandmother, Mavrakis, then, "stuck his fingers in there and he pushed the door open." When asked if she or her son let Mavrakis in the apartment, she confirmed that they did not. On cross-examination, she indicated that there was a curtain covering the glass door when Mavrakis arrived. In addition, she admitted that, despite Mavrakis' pounding on the glass, the door did not break.

{¶17} Mavrakis argues that, by unlocking the door, Fye's uncle gave him an express or implied invitation to enter the apartment. Mavrakis contends that *State v. Barksdale*, 2 Ohio St.3d 126 (1983) supports his argument. *Barksdale* is not on point. In *Barksdale*, the issue was whether "a party, who enters premises *open to the public* with an intent to commit thereon a felonious act, forfeits his right of entry and becomes a trespasser, subject to prosecution * * * for breaking and entering." (Emphasis added.) *Id.* at 127. It was undisputed that the business owner had extended a "tacit invitation" to the general public to enter the premises, which amounted to a privilege. *Id.* at 128. The issue was whether that privilege had been forfeited, not the granting of an invitation to enter. Moreover, residential premises are inherently different than business premises. "The interest of a private person in the inviolability of his home is materially greater than that of a business owner in his business premises, particularly where the business premises are open to the public." *State v. Steffen*, 31 Ohio St.3d 111, 115 (1987).

{¶18} Mavrakis has not cited any case law indicating that there is a privilege to enter a residence based solely on the unlocking of a door. The jury was not required to view the unlocking of the door in isolation from the circumstances surrounding that action. *See State v. Wells*, 5th Dist. Stark No. 2009 CA 00168, 2010-Ohio-3126, ¶ 26 (finding sufficient evidence of

trespass despite victim's unlocking of door when victim did not give defendant permission to enter and defendant forced door open). The jury was presented with evidence that Mavrakis persisted in banging on the door with a bayonet for two minutes. Although Fye's uncle unlocked the door, he testified that he did so out of fear. Neither the uncle nor the grandmother opened the door or said that Mavrakis could enter.

{¶19} Mavrakis also argues that his privilege to enter the apartment was never revoked. But, this argument presupposes that he had a privilege to enter the apartment in the first place. Viewing the evidence in the light most favorable to the State, a rational jury could conclude that Mavrakis trespassed in the apartment.

{¶20} Mavrakis' first assignment of error is overruled.

<u>Assignment of Error Number Two</u>

MR. MAVRAKIS' CONVICTIONS [sic] FOR AGGRAVATED BURGLARY
IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶21} In his second assignment of error, Mavrakis contends that his conviction for aggravated burglary was against the manifest weight of the evidence. We disagree.

{¶22} "[A] prerequisite for any reversal on manifest-weight grounds is *conflicting evidence*." (Emphasis added.) *State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, ¶ 20. "In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must * * * determine whether *in resolving conflicts in the evidence*, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Emphasis added.) *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). When reversing based on the manifest weight of the evidence, "the appellate court sits as a 'thirteenth juror' and disagrees with the [fact-finder's] resolution of the

*conflicting testimony*." (Emphasis added.) *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982).

**{¶23}** Although Mavrakis purports to make a manifest-weight argument, he concedes "none of the witnesses' testimony is in conflict." Mavrakis does not contend that the jury lost its way in resolving conflicting evidence. Rather, he argues that the evidence presented did not establish that he trespassed because he had "an implied grant to enter" the apartment. In essence, he reiterates his sufficiency argument. As Mavrakis has not pointed to any conflicting evidence in the record, his conviction is not against the manifest weight of the evidence.

**{¶24}** Mavrakis' second assignment of error is overruled.

<u>Assignment of Error Number Three</u>

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR BY IMPOSING A MANDATORY SENTENCE.

**{¶25}** Under his third assignment of error, Mavrakis argues that the trial court had insufficient evidence regarding his prior convictions to impose a mandatory prison term. We disagree.

**{¶26}** A court is required to impose a mandatory sentence upon an offender who is convicted of a first degree felony if the offender was previously convicted of any first or second degree felony. R.C. 2929.13(F)(6). In the present case, Mavrakis was convicted of aggravated burglary. Aggravated burglary is a first degree felony. R.C. 2911.11(B). Thus, if Mavrakis had been previously convicted of a first or second degree felony, the court was required to sentence him to a mandatory prison term.

**{¶27}** At the start of the sentencing hearing, the trial judge noted that she had ordered and reviewed a presentence investigation report ("PSI"). The prosecuting attorney and defense counsel confirmed that they had also reviewed it. Defense counsel commented on certain

discrepancies in the PSI regarding Mavrakis' childhood. The PSI lists Mavrakis' criminal history including a 1997 felonious assault. It indicates that he served eight years for that conviction, but it does not state the degree of the offense. Neither defense counsel nor Mavrakis indicated that there were any inaccuracies in his criminal history as listed in the PSI.

{¶28} Later in the hearing, the trial judge stated that the sentence would be mandatory because of Mavrakis' prior offenses, particularly the 1997 felonious assault, which she stated was "an F-2 offense." The prosecutor interjected that it was "[a]n F-1 offense" because the victim was a police officer. Mavrakis did not object or contradict this factual assertion, which was not contained in the PSI. The trial court, then, proceeded to merge the vandalism and aggravated menacing convictions into the aggravated burglary. Then, she announced that she was imposing a seven-year sentence, which would be mandatory. At that point, defense counsel objected "only to the mandatory nature of the sentence."

{¶29} On appeal, Mavrakis argues that "something more must be placed in the record to support the existence of a prior conviction other than the unsworn statement of the prosecutor and the unsworn and hearsay statements made in the PSI." Initially, we note that the Rules of Evidence do not apply to sentencing hearings. Evid.R. 101(C)(3). The court is required to consider information presented by the prosecutor, the offender, and the presentence investigation report, which contains the defendant's criminal history. *See* R.C. 2929.19(B)(1) and R.C. 2951.03(B)(1).

> At the sentencing hearing, the court, before imposing sentence, shall consider the record, any information presented at the hearing by any person pursuant to division (A) of this section [including the offender, the prosecuting attorney, and the victim], and, if one was prepared, the presentence investigation report made pursuant to section 2951.03 of the Revised Code or Criminal Rule 32.2, and any victim impact statement made pursuant to section 2947.051 of the Revised Code.

R.C. 2929.19(B)(1).

{¶30} Mavrakis argues that a PSI is "limited to information which is 'directly relevant to the aggravating and mitigating circumstances.'" Quoting *State v. Glenn*, 28 Ohio St.3d 451 (1986), paragraph two of the syllabus. The Court, however, prefaced that requirement stating, "It is error for one who prepares a presentence report to include witness statements given to the police or other versions of the crime taken from police reports when the presentence report is to be utilized in the *mitigation phase of an aggravated murder trial*." (Emphasis added.) *Glenn* at paragraph two of the syllabus. Mavrakis has not pointed to any case law extending *Glenn* beyond capital cases.

{¶31} Mavrakis acknowledges that prior convictions can be considered as a sentencing factor under R.C. 2929.12(E)(2). Nonetheless, he contends that something beyond the PSI "such as a journal entry of conviction" is required to prove a prior conviction under the mandatory sentencing provisions in R.C. 2929.13(F)(6). We have previously noted that a "PSI report provides the trial court with valuable information to be considered in determining the type and duration of sentence to impose." *State v. Berkenstock*, 9th Dist. Summit Nos. 26721 and 26815, 2013-Ohio-4576, ¶ 16. This includes "fact-based considerations" under R.C. 2929.13. *See id.* "Where, as here, the prior offense affects only the penalty, it is not an essential element of the subsequent offense, but strictly a sentencing consideration for the court." *State v. Allen*, 29 Ohio St.3d 53, 55 (1987).

{¶32} Mavrakis further argues that the trial court could not take judicial notice of his prior conviction. Mavrakis ignores the fact that the PSI was ordered specifically for sentencing in this case. This is not a case where "the trial court went beyond the evidence in the record and sua sponte took judicial notice of 'its own docket, entries and files.'" *See In re J.C.*, 186 Ohio

App.3d 243, 2010-Ohio-637, ¶ 13 (9th Dist.). Rather, the PSI, and the facts contained therein, are a part of the record in this case.

**{¶33}** If Mavrakis believed there were any factual inaccuracies in the PSI, R.C. 2951.03(B) provided a mechanism for him to raise that issue.

> Prior to sentencing, the court shall permit the defendant and the defendant's counsel to comment on the presentence investigation report and, in its discretion, may permit the defendant and the defendant's counsel to introduce testimony or other information that relates to any alleged factual inaccuracy contained in the report.

R.C. 2951.03(B)(2). "The burden of proof regarding any inaccuracy in the PSI is on the defendant who alleges the report is inaccurate." *State v. Deeb*, 6th Dist. Erie No. E-14-117, 2015-Ohio-2442, ¶ 14, quoting *State v. Cisco*, 5th Dist. Delaware No. 13 CAA 04 0026, 2013-Ohio-5412, ¶ 28. Mavrakis did not challenge the factual accuracy of his criminal history as contained in the PSI.

**{¶34}** Consequently, we cannot say that the trial court erred in relying on the PSI in determining that Mavrakis had a prior conviction for felonious assault. Statutorily felonious assault is either a first or second degree felony. R.C. 2903.11(D). In the instant case, Mavrakis' aggravated burglary conviction is first degree felony; therefore, his sentence is mandatory. *See* R.C. 2929.13(F)(6).

**{¶35}** Mavrakis' third assignment of error is overruled.

Assignment of Error Number Four

THE TRIAL COURT COMMITTED STRUCTURAL, REVERSIBLE, AND PLAIN ERROR BY CONSIDERING JURY ACQUITTED CRIMINAL CHARGES AT MR. MAVRAKIS' SENTENCING HEARING IN VIOLATION OF HIS U.S. CONSTITUTION'S [sic] SIXTH AMENDMENTS RIGHTS.

**{¶36}** Under his fourth assignment of error, Mavrakis argues that the trial judge violated his Sixth Amendment right to a jury trial by considering trial testimony regarding the incident at

the muffler shop after the jury found him not guilty of the indicted offenses related to that location. We disagree.

{¶37} Mavrakis argues that the court committed structural and plain error. Structural error is limited to certain constitutional errors that "affect[ ] the framework within which the trial proceeds, rather than simply [being] an error in the trial process itself." *State v. Davis*, 127 Ohio St.3d 268, 2010-Ohio-5706, ¶ 22, quoting *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, ¶ 17. While plain error requires a showing that the outcome would have been different but for the error, structural error requires a reversal even without a showing of prejudice. *Davis* at ¶ 18. An appellate court must first find that a constitutional error has occurred before it can find that the alleged error was structural. *State v. Williams*, 9th Dist. Summit No. 26014, 2012-Ohio-5873, ¶ 7.

{¶38} Mavrakis relies primarily on *Alleyne v. United States*, __ U.S. __, 133 S.Ct. 2151 (2013). In *Alleyne*, a jury found the defendant had a firearm, but the trial judge found that he "brandished" the firearm. Brandishing a firearm elevated the statutory minimum from five years to seven years. *Id.* at 2155. The Supreme Court held, "When a finding of fact alters the *legally prescribed punishment* so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury." (Emphasis added.) *Id.* at 2162. Because the fact of "brandishing" a firearm elevated the statutory minimum sentence, that fact needed to be found by the jury, not the judge. The Court's ruling did not extend to all "fact[s] that influence[] judicial discretion." *Id.* at 2163. The Court continues to recognize that "broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment." *Id.*

> Juries must find any facts that increase either the statutory maximum or minimum because the Sixth Amendment applies where a finding of fact both alters the legally prescribed range *and* does so in a way that aggravates the penalty. Importantly, this is distinct from factfinding used to guide judicial discretion in

selecting a punishment 'within limits fixed by law.' *Williams v. New York*, 337 U.S. 241, 246 (1949). While such findings of fact may lead judges to select sentences that are more severe than the ones they would have selected without those facts, the Sixth Amendment does not govern that element of sentencing.

(Emphasis sic.) *Id.* at fn. 2.

**{¶39}** This case involves neither a statutory maximum nor minimum. Mavrakis was convicted of aggravated burglary, a first degree felony. *See* R.C. 2911.11(A)(2) and (B). For a first degree felony, Mavrakis could be sentenced from three to eleven years in prison. R.C. 2929.14(A)(1). The trial court sentenced him to seven years. As the trial court did not determine a fact that altered the legally prescribed sentencing range, the Sixth Amendment is not implicated. *See Alleyne* at fn. 2.

**{¶40}** Mavrakis' reliance on *State v. Bevly*, 142 Ohio St.3d 41, 2015-Ohio-475 is similarly misplaced. In *Bevly*, a defendant brought a challenge to R.C. 2907.05(C)(2)(a) because it elevated a presumption of a prison term to a mandatory prison term if there was corroborating evidence of the crime. Without the corroborating evidence finding, a defendant could possibly overcome the presumption of a prison term and receive a community-control sanction. *Bevly* at ¶ 25. The Court found, "In raising the floor of the minimum sentence, the statute produces a higher sentencing range." *Id.* at ¶ 26. Unlike *Bevly*, Mavrakis was not subjected to a higher sentencing range.

**{¶41}** Because Mavrakis has not presented a constitutional error, a structural error analysis is not appropriate in this case. *See Williams*, 2012-Ohio-5873, at ¶ 10. Nor has Mavrakis demonstrated plain error. In order to find plain error, there must be "(1) a deviation from a legal rule; (2) that is obvious, and; (3) that affects the appellant's substantial rights." *State v. Just*, 9th Dist. Wayne No. 12CA0002, 2012-Ohio-4094, ¶ 6. "[T]he starting point for a plain-error inquiry" is the existence of an "error." *State v. Hill*, 92 Ohio St.3d 191, 200 (2001).

**{¶42}** "It is well established that a sentencing judge may take into account facts introduced at trial relating to other charges, even ones of which the defendant has been acquitted." *State v. Wiles*, 59 Ohio St.3d 71, 78 (1991). The court may consider prior arrests, unindicted acts, and not guilty verdicts before imposing sentence as long as they are not the sole basis for the sentence. *State v. Reeves*, 8th Dist. Cuyahoga No. 100560, 2014-Ohio-3497, ¶ 32; *see also State v. D'Amico*, 9th Dist. Summit No. 27258, 2015-Ohio-278, ¶ 6 (uncharged conduct may be considered when it is not the sole basis for the sentence).

**{¶43}** In the present case, after acknowledging that the jury found Mavrakis not guilty on certain counts, the trial court stated, "clearly I'm not sentencing on those counts, but as I've reviewed here, when you think about the issues that caused me concern about this, about community safety, and about this man's likelihood to commit future crime - - those are things that I have to take into account - - I simply can't discount what happened at those places." Mavrakis argues that this statement demonstrates that he was sentenced for the acquitted charges at the muffler shop.

**{¶44}** Mavrakis takes this statement out of context. The trial judge did not state or otherwise indicate that she believed Mavrakis committed a crime at the muffler shop; rather she was concerned about Mavrakis' "hair-trigger temper" as reflected in the testimony she had heard. The court recalled the testimony of Fye's sister wherein she stated that Mavrakis threatened their father stating, "I'm going to cut your f***ing head off if you don't call your son." The arresting officer had testified that, while in the booking area of the jail, Mavrakis stated: "Good thing he wasn't there. I would have killed him" and "I'm going to do some time, but when I get out, I will kill him." The trial judge was concerned that, if Mavrakis did not learn to control his temper, there would be "bigger problems."

**{¶45}** Moreover, this testimony did not form the sole basis for Mavrakis' sentence. The trial judge noted that Mavrakis had a "significant record" and was on post-release control when he committed the aggravated burglary. She recounted the testimony of Fye's grandmother and uncle regarding how Mavrakis entered the apartment swinging the bayonet with "rage in his eyes," how shocked and frightened they were, and that they were not strangers to Mavrakis. The judge noted that "the root of the problem in this case was this ownership of a car" when Mavrakis was under a license suspension due to his prior conviction for aggravated vehicular homicide. She noted that, if Mavrakis had been compliant with his sentence and supervision, this root problem would never have arisen. These remarks indicate that Mavrakis had not responded favorably to previously imposed sanctions. Thus, the sentencing transcript as a whole reflects that the trial judge considered the need to protect the public, the seriousness of Mavrakis' conduct, its impact on the victims, and the likelihood that he would commit future crimes. *See* R.C. 2929.11 and R.C. 2929.12.

**{¶46}** Mavrakis' fourth assignment of error is overruled.

<u>Assignment of Error Number Five</u>

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR AT THE SENTENCING HEARING BY FAILING TO COMPLY WITH R.C. 2929.19(B)(2)(F).

**{¶47}** Under his fifth assignment of error, Mavrakis argues the trial court erred because it failed to order him not to use any drugs of abuse and did not advise him that he would be subject to random drug testing in prison.

**{¶48}** R.C. 2929.19(B)(2)(f) provides:

if the sentencing court determines at the sentencing hearing that a prison term is necessary or required, the court shall * * * [r]equire that the offender not ingest or be injected with a drug of abuse and submit to random drug testing as provided in section 341.26, 753.33, or 5120.63 of the Revised Code, whichever is applicable

to the offender who is serving a prison term, and require that the results of the drug test administered under any of those sections indicate that the offender did not ingest or was not injected with a drug of abuse.

**{¶49}** In the present matter, it is undisputed that the trial court did not provide this advisement to Mavrakis. Mavrakis argues that this failure amounts to plain error and requires that we remand the matter for resentencing. The State, on the other hand, argues that any error was harmless. A harmless error "does not affect substantial rights [and] shall be disregarded." Crim.R. 52(A). "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B).

**{¶50}** We have previously "agree[d] with other Districts that have decided the trial court's failure to include this provision in a defendant's sentence is harmless error." *State v. Culgan*, 9th Dist. Medina No. 09CA0060-M, 2010-Ohio-2992, ¶ 18. These courts have reasoned that the requirements are intended to facilitate drug testing of prisoners, not to create a substantive right for the defendant. *Id*., citing *State v. Leeson*, 2d Dist. Montgomery No. 21993, 2007-Ohio-3704, ¶ 8, *State v. Mason*, 3d Dist. Marion No. 9-05-21, 2006-Ohio-1998, *State v. Willet*, 5th Dist. Muskingum No. CT2002-0024, 2003-Ohio-6357. In addition to the Second, Third, and Fifth Districts, the First and the Twelfth Districts have also found that the failure to provide this notification is harmless error. *See, e.g., State v. Jones*, 1st Dist. Hamilton No. C-130625, 2014-Ohio-3345, ¶ 19; *State v. Moore*, 12th Dist. No. CA2014-02-016, 2014-Ohio-5191, ¶ 16.

**{¶51}** Mavrakis cites *State v. Benitez-Maranon*, 9th Dist. Summit Nos. 26461 and 26659, 2014-Ohio-3575 in support of his argument that this matter should be remanded to provide the advisement contained in the statute. *Id.* at ¶ 16-17. *Benitez-Maranon* did not present us with an argument, as we have in the present case, that the failure to provide the advisement contained in

R.C. 2929.19(B)(2)(f) rises to the level of plain error. Consequently, it did not alter our holding in *Culgan* that such error is harmless. In addition, *Benitez-Maranon* was already being remanded to the trial court for other sentencing issues. *Id.* at ¶ 15. Accordingly, we directed that the trial court also comply with R.C. 2929.19(B)(2)(f) on remand. *Id.* at ¶ 17. Such is not the case here.

**{¶52}** Mavrakis' fifth assignment of error is overruled.

Assignment of Error Number Six

MR. MAVRAKIS WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL COUNSEL FAILED TO ARGUE AT THE SENTENCING HEARING THAT THE TRIAL COURT FAILED TO COMPLY WITH R.C. 2929.19(B)(2)(F).

**{¶53}** Under his sixth assignment of error, Mavrakis argues that his trial counsel was ineffective for not objecting to the trial court's failure to order him not to use drugs and to inform him that he would be subject to random drug testing.

**{¶54}** To prove ineffective assistance of counsel, Mavrakis must establish that (1) his counsel's performance was deficient, and (2) that but for counsel's deficient performance there is a reasonable probability that the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We have already determined that the trial court's failure to comply with R.C. 2929.19(B)(2)(f) was harmless error. When an error is harmless, the appellant "cannot show the necessary prejudice required to support an ineffective assistance of counsel claim." *State v. Blankenship*, 9th Dist. Summit No. 16019, 1993 WL 329962, *4 (Sept. 1, 1993); *see also State v. Smith*, 9th Dist. Wayne No. 02CA0068, 2003-Ohio-4264, ¶ 11.

**{¶55}** Mavrakis' sixth assignment of error is overruled.

III

**{¶56}** Mavrakis' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
BETH WHITMORE
FOR THE COURT

HENSAL, P. J.
SCHAFER, J.
CONCUR.


APPEARANCES:

NEIL P. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.