[Cite as *State v. Cain*, 2016-Ohio-7460.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

STATE OF OHIO

    Appellee

    v.

EDWIN O. CAIN, JR.

    Appellant

C.A. No.     27785

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 2014 09 2827

DECISION AND JOURNAL ENTRY

Dated: October 26, 2016

WHITMORE, Judge.

{¶1} Appellant, Edwin O. Cain, appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms, in part, and reverses, in part.

I

{¶2} This matter arises from an incident that occurred on June 8, 2013. On that date, A.B. visited Irving Moss' home in order to party, drink, and use drugs. A.B. described Mr. Moss' home as a party house that is "open to [Mr. Moss'] friends to come hang out * * * and do stuff." Mr. Moss was not home when A.B. arrived. However, Mr. Moss' friend, known as "Fast," was there at that time. A.B. identified "Fast" as Mr. Cain. A.B. alleged that, soon after she arrived at Mr. Moss' home, she and Mr. Cain began to argue over a situation that occurred two weeks prior. During the course of their argument, A.B. sat down on the ledge of an interior balcony, facing Mr. Cain. Mr. Cain then allegedly pushed A.B. backward over the balcony, causing her to "free-fall" down two stories onto the landing of a stairwell. A.B. landed on her

back and sustained physical injuries including a broken leg and broken ribs. A.B. indicated that she did not call 911 or an ambulance because of the "environment" at Mr. Moss' home. Instead, A.B.'s family picked her up and drove her to Akron General Hospital for treatment of her injuries.

{¶3} Mr. Cain was indicted on: (1) one count of possession of drugs, in violation of R.C. 2925.11(A)(C)(2), a felony of the fifth degree; (2) one count of carrying concealed weapons, in violation of R.C. 2923.12(A)(1), a felony of the fourth degree, and (3) one count of felonious assault, in violation of R.C. 2903.11(A)(1), a felony of the second degree. The grand jury then issued a supplemental indictment to include a repeat violent offender specification on count three, felonious assault.

{¶4} A jury trial ensued[1] wherein the following witnesses testified on behalf of the State: (1) A.B.; (2) Mr. Moss; (3) Officer Scott Myers; (4) Officer Greg Joyce; and (5) Lieutenant David Whiddon. Mr. Cain did not call any witnesses to testify on his behalf. The jury returned a verdict of guilty on all three counts of the indictment. Mr. Cain was sentenced to eight years of mandatory imprisonment for felonious assault and the repeat violent offender specification, to be served concurrently with six months of non-mandatory imprisonment for possession of drugs, and six months of non-mandatory imprisonment for carrying concealed weapons.

{¶5} Mr. Cain now appeals, raising eight assignments of error. For ease of discussion, we reorder Mr. Cain's assignments of error.

---

[1] The repeat violent offender specification was tried separately to the trial court and Mr. Cain was found guilty.

II

<u>Assignment of Error Number One</u>

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR BY INSTRUCTING THE JURORS TO PUT ASIDE THEIR PERSONAL EXPERIENCE AND BY RESTRICTING MR. CAIN FROM QUESTIONING THE JURORS AS TO THEIR EXPERIENCES AND BIASES.

**{¶6}**  In his first assignment of error, Mr. Cain argues that the trial court committed plain error in instructing the jury to "disregard [their] own life experiences," and by "restricting defense counsel from questioning the jurors about their personal experiences."  Specifically, Mr. Cain argues that the trial court precluded him from questioning "a juror about drug and alcohol usage or convictions of a juror's family member."

**{¶7}**  In response, the State argues that Mr. Cain cannot demonstrate prejudice because (1) the trial court issued a curative statement to the jury and (2) the State excused that particular juror by exercising a peremptory challenge.

**{¶8}**  Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."  "'[T]he accused bears the burden of proof to demonstrate plain error on the record * * * and must show an error, i.e., a deviation from a legal rule that constitutes an obvious defect in the trial proceedings[.]'" (Alterations sic.)  *State v. Jackson*, 9th Dist. Summit No. 27479, 2015-Ohio-5096, ¶ 51, quoting *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 22.  "'However, even if the error is obvious, it must have affected substantial rights, and [w]e have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.'"  *Id*.  "'The accused is therefore required to demonstrate a reasonable probability that the error resulted in prejudice * * *.'"  *Id*.

{¶9}    Here, during voir dire, the following exchange occurred among Mr. Cain's counsel, a prospective juror, and the trial court:

[counsel]:  * * * Has anyone had a serious time where either you or someone close to you had been accused of something bad that you had not done?  No one has had someone, a family friend or a family member, accused of something that they had [not] been guilty of?  Yes.

[juror]:  My son was in trouble before.  This last year—maybe it was this year. He had a trial.  They had him for attacking with a hammer some kids.  He was found not guilty on all counts.

[counsel]:  How did that experience resonate with you?

[juror]:  It hurt everyone and the family and everyone else and problems like that. So I'm glad it's over.  It cost me.  I mean, they had to move in with me.  He was kicked out of his apartment, so on.

[counsel]:  Now, in this situation did you have a conversation with your son?

[juror]:  Oh yeah, several times.

[counsel]:  Did he say, "Dad, I didn't do what they have accused me of"?

[juror]:  Yes, he did.

[counsel]:  * * * [W]hat was your reaction when he told you that?

[juror]:  Well, I can understand it, because of what—a hammer was involved, and as soon as someone thinks that, they think guilty, but he just went to the floor with it.  He didn't use it until he was attacked, and he never did use it.  He had it in his hand.

[counsel]:  Now, this is your son?

[juror]:  Yes.

[counsel]: And as a father, did you believe him when he said it?

[juror]:  Yes, I did.

[counsel]:  Why did you believe him?

[juror]:  Because I saw the white trash that attacked him and I knew they were—it was really comical, the trial and everything else.

[counsel]: * * * [W]as there any alcohol or drugs involved with that?

[the court]: That's enough, [counsel].

[counsel]: Yes, sir.

[the court]: The [c]ourt has explained to this jury that it's their responsibility to evaluate the evidence as it comes from the witness stand and to follow the law as I give it to them and to apply that law to the facts as they find them from that evidence and let the chips fall where they may.

We have to put aside personal experiences, even though we're all human, and they have to make that evaluation in light of what takes place in this courtroom only. Next question.
* * *

At the conclusion of voir dire, counsel asked the trial court for a side bar to address an alleged

error. Counsel stated:

* * *
I believe it was an irreversible error for the [c]ourt to tell the people to put aside their personal experiences in the deliberation process, and that is where I was trying to go and assess this juror's personal experiences and open up to the other jurors * * * [.]

In response, the trial court explained:

I'll make a corrective explanation to the jury just on the off-chance that they took that to mean what you actually said. * * * I certainly didn't mean to say that they really come here without having any experience whatsoever, but I frankly thought I confined the explanation to a responsibility as jurors to follow the law as given to them, to apply that law to the facts as they find them from the evidence in this courtroom and to let the chips fall where they may, so putting aside whatever their personal feelings might be, but I still think that is a correct statement of the law. * * *

The trial court then addressed the jury with the following curative instruction:

* * *
I want to reemphasize one point that counsel had pointed out to me at side bar. Everyone comes into this courtroom with a wealth of personal experience, and you can't just say, okay, whatever personal experience you have in your life you are now going to forget. I did not mean to give you that impression.

> I merely want to make sure and have it be clear to each of you once again that your responsibility as jurors will be to accept the law as I give it to you and to apply that law to the facts as you find them from the evidence that is presented in this courtroom. And that you have to put aside that which you have learned about the law or about facts generally in favor of what takes place in this courtroom.
>
> And again, if there's anyone that has a problem with that explanation, please raise your hand. No hands are raised.
>
> * * *

The State then used one of its peremptory challenges to excuse this prospective juror.

{¶10} We find no merit in Mr. Cain's above-stated argument. The trial court offered a curative instruction in order to clarify that a juror cannot simply "forget" his or her own personal experiences, but that a juror has a responsibility "to accept the law as [provided] and to apply that law to the facts [] from the evidence that is presented in [the] courtroom." "'A jury is presumed to follow the instructions, including curative instructions, given it by a trial judge.'" *State v. Simpson*, 9th Dist. Lorain No. 11CA010138, 2012-Ohio-3195, ¶ 37, quoting *State v. Garner,* 74 Ohio St.3d 49, 59 (1995). As such, Mr. Cain has not demonstrated a reasonable probability that the trial court's comment resulted in prejudice.

{¶11} Additionally, Mr. Cain has not demonstrated a reasonable probability that the trial court's limitation on his questioning of the prospective juror resulted in prejudice. "R.C. 2945.27 and Crim.R. 24(B) afford counsel the opportunity to conduct reasonable voir dire of prospective jurors." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶ 119, citing *State v. Jackson,* 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 48. "But the length and scope of voir dire are within the sound discretion of the trial court 'and vary depending on the circumstances of a given case.'" *Adams* at ¶ 119, quoting *State v. LaMar,* 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 40.

{¶12} Prior to the trial court's directive regarding this juror, counsel questioned him at length regarding the situation with his son's arrest and subsequent acquittal. Also, the trial court

did not prevent counsel from further inquiry of the jury. The record indicates that, after his questioning of this particular juror, counsel presented one more question to the jury pool at-large. When no one raised their hands in response, counsel stated, "I have no further questions, Your Honor." Finally, as noted above, the State exercised a peremptory challenge and excused this juror. As such, any additional questioning of this particular juror would be moot.

{¶13} Mr. Cain's first assignment of error is overruled.

<u>Assignment of Error Number Four</u>

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT OVERRULED MR. CAIN'S CRIM. R. 29(A) MOTION FOR JUDGMENT OF ACQUITTAL BECAUSE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT HIS CONVICTIONS.

{¶14} In his fourth assignment of error, Mr. Cain argues that there is insufficient evidence to support his convictions for felonious assault, in violation of R.C. 2903.11(A)(1), and carrying concealed weapons, in violation of R.C. 2923.12(A)(1). We note that, although he alleges plain error, Mr. Cain does not actually make a plain error argument. However, a plain error argument would not be appropriate because Mr. Cain made a Rule 29 motion for acquittal.

{¶15} "A motion for acquittal pursuant to Rule 29 of the Ohio Rules of Criminal Procedure may be granted only when the evidence is insufficient to sustain a conviction." *State v. Levine*, 9th Dist. Summit No. 17978, 1997 WL 193337, *3 (Apr. 16, 1997), citing *State v. Fields*, 102 Ohio App.3d 284, 288 (12th Dist.1995). "'[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990). "In essence, sufficiency is a test of adequacy." *Thompkins* at 386. When reviewing a conviction for sufficiency, evidence must be viewed in a light most favorable to the prosecution. *State v.*

*Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. The pertinent question is whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*. "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Thompkins* at 386, citing *State v. Robinson*, 162 Ohio St. 486 (1955). This Court, therefore, reviews questions of sufficiency de novo. *State v. Salupo*, 177 Ohio App.3d 354, 2008-Ohio-3721, ¶ 4 (9th Dist.).

{¶16} R.C. 2903.11(A)(1) provides, in relevant part, that "[n]o person shall knowingly * * * [c]ause serious physical harm to another * * * ." Serious physical harm includes:

  (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

  (b) Any physical harm that carries a substantial risk of death;

  (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

  (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

  (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶17} Further, R.C. 2923.12(A)(1) states that "[n]o person shall knowingly carry or have, concealed on the person's person or concealed ready at hand, any of the following: [a] deadly weapon other than a handgun[.]"

{¶18} Here, A.B. testified that, during an argument, Mr. Cain, known as "Fast," "purposely" pushed her over a balcony, causing her to "free-fall" down two stories onto the landing of a stairwell. Further, A.B. testified that, as a result of the fall, she sustained injuries including a broken leg and broken ribs. A.B. explained that "the pain was so horrible I couldn't move. I never even felt anything like that before. It was horrible." Additionally, A.B. testified that: (1) she has ongoing pain in her ribs, knee, and back; (2) her doctor recommended surgery on her leg; (3) she was not able to "move around or walk" after the incident; (4) she "was in constant pain all the time," and (5) she is "still suffering from the consequences of that night."

{¶19} Mr. Moss testified that he has known Mr. Cain for approximately fifteen years, and identified Mr. Cain as "Fast." Further, Mr. Moss testified that, when he came home on the date of the incident, he saw A.B. "laying down at the bottom of the steps," and she was "moaning." Mr. Moss stated that he "helped [A.B.] up," and asked whether she wanted him to call the police or paramedics. A.B. declined. Mr. Moss also testified that A.B. "said she got knocked off the railing," and that "Fast did it."

{¶20} Lieutenant Whiddon testified that he interviewed A.B., reviewed her statement contained in the initial incident report, and reviewed her medical records, and that A.B. was "pretty consistent" regarding how she was injured. Further, Lieutenant Whiddon testified that, during her interview, A.B. kept referring to Mr. Cain as "Fast."

{¶21} The State also introduced A.B.'s medical records as State's Exhibit 12, detailing: (1) the extent of A.B.'s injuries from a "fall from a significant height," (2) that A.B. reported experiencing "pain all over," and (3) that A.B. claimed she was "pushed either downstairs or off of some sort of balcony."

{¶22} Officer Myers testified that, on the date of Mr. Cain's arrest, he and Officer Joyce observed Mr. Cain "sitting on the steps of a church" with "a bottle of alcohol at his feet." Further, Officer Myers testified that there was a bicycle "right next to him * * * [w]ithin reaching distance," and a knife was concealed in "a back pouch on the bike, right behind the seat." Officer Myers also testified that Mr. Cain admitted to being the owner of the bicycle. However, this fact was not included in the police report.

{¶23} Viewing the evidence in a light most favorable to the State, there is sufficient evidence to support a finding that Mr. Cain committed the crimes of felonious assault and carrying a concealed weapon: (1) A.B. and Mr. Moss both identified Mr. Cain as "Fast;" (2) A.B. testified that Mr. Cain purposefully pushed her over a balcony, causing her to "free-fall" down two stories onto a stairwell landing; (3) A.B. testified that, as a result of her fall, she sustained injuries including a broken leg and ribs; (4) A.B. testified that her injuries caused her "horrible" pain; (5) Mr. Moss testified that, on the date of the incident, A.B. told him that "Fast" knocked her off the railing; (6) Lieutenant Whiddon testified that A.B.'s version of events was "pretty consistent" throughout his investigation; (7) A.B.'s medical records indicated the severity of her injuries, and that she alleged being pushed down stairs or off a balcony; and (8) Officer Myers testified that Mr. Cain admitted to being the owner of a bicycle, within reaching distance of Mr. Cain, on which a knife was concealed in a pouch behind the seat. Based upon these facts, a rational trier of fact could have found the essential elements of felonious assault and carrying concealed weapons proven beyond a reasonable doubt. *See Jenks,* 61 Ohio St.3d at paragraph two of the syllabus.

{¶24} Mr. Cain's fourth assignment of error is overruled.

Assignment of Error Number Three

MR. CAIN'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶25} In his third assignment of error, Mr. Cain argues that his convictions for felonious assault and carrying concealed weapons are against the manifest weight of the evidence. Specifically, Mr. Cain argues that, due to A.B.'s "statements and her varying accounts of the events, both while at the hospital and when she reported the incident to the police," the jury lost its way in convicting him of felonious assault. Additionally, Mr. Cain argues that, because the police report did not include documentation regarding his alleged admission to owning the bicycle, the jury lost its way in convicting him of carrying concealed weapons.

{¶26} In determining whether a conviction is against the manifest weight of the evidence an appellate court:

> must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶27} A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than it supports the other. *Thompkins*, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. *Id*., quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court must make every reasonable presumption in favor of the judgment and findings of fact of the trial court. *Karches v. Cincinnati*, 38 Ohio St.3d 12, 19 (1988). Therefore, this Court's "discretionary power to grant a new trial should be exercised

only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983); *see also Otten*, 33 Ohio App.3d at 340.

{¶28} Here, the jury heard all of the testimony, including that A.B. had a drug and alcohol problem at the time of the incident, that A.B. originally reported that "she was not sure of the [suspect's] name," and that Officers Myers and Joyce did not document Mr. Cain's admission regarding ownership of the bicycle. Further, the jury reviewed the State's exhibits, including A.B.'s medical records and Mr. Moss' recorded interview wherein he claims to have seen an unknown person push A.B. over the balcony. Simply stated, the jury chose to believe A.B.'s version of events, and, chose to believe Officer Myer's testimony regarding ownership of the bicycle. "Credibility determinations are primarily within the province of the trier of fact[,]" who is "'free to believe all, part, or none of the testimony of each witness.'" *State v. Just,* 9th Dist. Wayne No. 12CA0002, 2012-Ohio-4094, ¶ 42; *State v. Cross,* 9th Dist. Summit No. 25487, 2011-Ohio-3250, ¶ 35, quoting *Prince v. Jordan,* 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35. Having reviewed the record, we cannot conclude that the jury clearly lost its way or created a "manifest miscarriage of justice." *Otten,* 33 Ohio App.3d at 340.

{¶29} Mr. Cain's third assignment of error is overruled.

<u>Assignment of Error Number Two</u>

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT DENIED MR. CAIN'S MOTION FOR [A] MISTRIAL DUE TO PROSECUTORIAL MISCONDUCT.

{¶30} In his second assignment of error, Mr. Cain argues that the trial court erred in denying his motion for a mistrial due to prosecutorial misconduct. Specifically, Mr. Cain argues that the assistant prosecutor: (1) appealed to the "emotion, passion and prejudice" of the jurors, (2) "disparage[d]" Mr. Cain by stating that he was "callous and uncaring," (3) "inject[ed] his

own personal opinion" about A.B.'s character, health issues, and anger, and (4) "urg[ed] the jury to send a message to [Mr. Cain]." We note that, although he alleges plain error, Mr. Cain does not actually make a plain error argument. However, a plain error argument would not be appropriate because Mr. Cain moved for a mistrial.

**{¶31}** In response, the State argues that, because "the record contains a number of curative instructions to the jury," Mr. Cain cannot demonstrate prejudice.

**{¶32}** "The Supreme Court of Ohio has limited the instances when a judgment may be reversed on grounds of prosecutorial misconduct." *State v. Knight*, 9th Dist. Lorain No. 03CA008239, 2004-Ohio-1227, ¶ 6, citing *State v. Lott*, 51 Ohio St.3d 160, 166 (1990). "The analysis of cases alleging prosecutorial misconduct focuses on the fairness of the trial and not the culpability of the prosecutor." *Id.* "A reviewing court is to consider the trial record as a whole, and is to ignore harmless errors 'including most constitutional violations.'" *Knight* at ¶ 6, quoting *Lott* at ¶ 166, quoting *United States v. Hasting*, 461 U.S. 499, 508-509 (1983). "Accordingly, a judgment may only be reversed for prosecutorial misconduct when the improper conduct deprives the defendant of a fair trial." *Knight* at ¶ 6, citing *State v. Carter*, 72 Ohio St.3d 545, 557 (1995).

**{¶33}** "'[T]he test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.'" *State v. Bowerman*, 9th Dist. Medina No. 13CA0059-M, 2014-Ohio-4264, ¶ 17, quoting *State v. Frazier,* 73 Ohio St.3d 323, 341 (1995), quoting *State v. Smith,* 14 Ohio St.3d 13, 14 (1984). "Parties are granted latitude in closing arguments, and the question as to the propriety of these arguments is generally considered one falling within the sound discretion of the trial court." *Frazier* at 341, quoting *State v. Loza,* 71 Ohio St.3d 61, 78 (1994). An abuse of

discretion connotes that a trial court was unreasonable, arbitrary, or unconscionable in its ruling.

*Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

**{¶34}** In his brief, Mr. Cain highlights the following statements of the assistant prosecutor as improper:

(1) How callous and uncaring do you have to be to treat another human being in that fashion? [Objection overruled.]

(2) [A.B.] showed a great deal of courage and character. She was attacked by this defendant on June 8, 2013. She's had significant health issues ever since then. Pain, difficulty getting around. She's still trying to manage her life, manage her addiction. She's eked out an existence, barely surviving with three kids, fighting against a horrible addiction. [Objection sustained.]

(3) Now, she's there, in serious pain, probably scared, in terms of what else is going on with her naturally. [Objection sustained.]

(4) The criminal defense lawyer over here wants to talk to you about the fact that [A.B.] was drunk. So what. That's not relevant. [Objection overruled.]

(5) They want to tell you that [A.B.] was using crack cocaine. She admitted that to you. She never hid that one bit. That's also not relevant to what this defendant did. That's an attempt to smear her. To make you not like her. To make you think she's a drunk, she's a crack head, and she doesn't deserve justice. * * * It's ridiculous. [Objection sustained.]

(6) And you all saw her testify. You saw her choked up and how emotional it was for her. She wasn't lying. * * * [Objection overruled.]

(7) She's here because he pushed her off the balcony down 15 feet and hurt her, broke her ribs, broke her leg, knocked her unconscious, almost killed her. That's why we're here. [Objection sustained.]

(8) Just because a criminal defense attorney calls a victim a liar doesn't mean that victim lied. It is unreasonable, defies all common sense and logic, to think that [A.B.] would take this stand and lie to each and every one of you.

(9) Of course she's going to be mad. It would be abnormal to not be mad. I would be fired up, too. So would you. [Objection sustained.]

(10) When you use your reason and your common sense, our stories line up. They all make sense. My job here is done. I prosecuted this case. Now your job is going to begin, to start your deliberations. Send a message to this

defendant, a message based upon the law and the evidence.[2]  His conduct is egregious and he's guilty.

{¶35}  However, the record indicates that, prior to, during and after closing arguments, the trial judge issued several admonitions and curative statements to the jury, as well as admonitions to the assistant prosecutor:

(1)  Each attorney will have an active role in the trial.  Attorneys make opening statements, question witnesses, make objections, and finally argue the case as the last step before you hear my final instructions and begin your deliberations.

Please remember that the attorneys are not witnesses, and since it's your duty to decide the case solely on the evidence you see or hear in the case, you *must* not consider as evidence *any* statement of *any* attorney made during the trial. (Emphasis added.)

(2)  Final arguments of counsel are an opportunity for each side's attorney to summarize the evidence and argue their respect[ive] positions.  *They are not evidence.*  (Emphasis added.)

(3)  * * * [J]ust refer to the facts and leave that to the jury.  You [the jury] will decide what the evidence shows.  This is just argument. It's not evidence.

(4)  * * * [C]onfine yourself to argument of the facts in this case.

(5)   Ladies and gentlemen of the jury, you will decide what the facts show and will apply the law as I have give[n] it to you to those facts.

(6)  * * * [D]o not make representations as to how you'd feel about this circumstance or how you would react.  You know better than that.  Stop it. * * * Ladies and gentlemen, you will disregard those comments of representation by [the assistant prosecutor].

---

[2] We note that, although Mr. Cain did not specifically object to the assistant prosecutor's statement, "[s]end a message to this defendant, a message based upon the law and the evidence," it is clearly improper and unnecessary for a prosecutor to make such a statement to the jury during closing arguments.  However, based upon the trial court's repeated curative instructions to the jury, that arguments of counsel are not evidence, we do not believe this statement deprived Mr. Cain of a fair trial.  Further, this Court does not condone the assistant prosecutor's blatant disregard of the instructions of the trial court throughout closing arguments.  As an officer of the court, the assistant prosecutor must respect the trial court's repeated admonitions and instructions.

(7)  Statements or answers that were stricken by the [c]ourt or which you were instructed to disregard are not evidence and must be treated as though you never heard them.  You must not speculate as to why the [c]ourt sustained an objection * * *.

{¶36}  In denying Mr. Cain's motion for a mistrial due to an alleged "improper closing argument on behalf of the [assistant] prosecutor," the trial court stated:

> The motion will be denied on the following [basis]:  [n]umber one, although, [assistant prosecutor], quite frankly, you were out of bounds in a variety of circumstances, it's the [c]ourt's conclusion that the [c]ourt's instructions to the jury were sufficiently curative of any actual prosecutorial misconduct, so that such misconduct is, at best, harmless error, and the defense may test that level of error on appeal, should that become necessary. * * *

{¶37}  Upon review of the record as a whole, we cannot say that the assistant prosecutor's statements, whether improper or not, deprived Mr. Cain of a fair trial.  First, "the evidence produced at the trial would have been sufficient to convict [Mr. Cain] of the charges raised even excluding the prosecution's statements."  *See State v. Canty*, 9th Dist. Lorain No. 99CA007332, 2000 WL 487744, *3 (Apr. 26, 2000).  Second, the trial court repeatedly instructed the jury that statements by counsel are argument, not evidence.  Third, the trial court sustained five out of eight objections listed above, and instructed the jury that "[s]tatements or answers that were stricken by the [c]ourt[,] or which you were instructed to disregard[,] are not evidence and must be treated as though you never heard them."

> Although misconduct of counsel in argument to the jury is ever to be condemned, it does not always constitute grounds for ordering a mistrial or reversing a judgment. If the trial court promptly intervenes by admonition to counsel and appropriate instruction and it appears that a verdict for the party represented by such offending counsel is clearly justified by the evidence, the verdict may be allowed to stand.

*Id*., quoting *Golamb v. Layton*, 154 Ohio St. 305 (1950), paragraph three of the syllabus. Further, "[a] presumption always exists that the jury has followed the instructions given to it by the trial court." *State v. Russell*, 9th Dist. Summit No 14714, 1991 WL 57331, *4 (Apr. 10,

1991), citing *Pang v. Minch*, 53 Ohio St.3d 186, 195 (1990). Therefore, we presume that the jury followed the trial court's repeated instructions that statements of counsel are not evidence, and we conclude that the trial court did not err in denying Mr. Cain's motion.

{¶38} Mr. Cain's second assignment of error is overruled.

Assignment of Error Number Five

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT ORDERED MR. CAIN HAVE "NO CONTACT" WITH THE PROSECUTING WITNESS.

{¶39} In his fifth assignment of error, Mr. Cain argues that the trial court erred when it imposed a no-contact order in addition to a prison term in his conviction for felonious assault. We note that, although he alleges plain error, Mr. Cain does not actually make a plain error argument. However, a plain error argument would not be appropriate because Mr. Cain objected to the "no contact" order.

{¶40} The State concedes error.

{¶41} In *State v. Anderson,* 143 Ohio St.3d 173, 2015-Ohio-2089, ¶ 31, the Supreme Court of Ohio held that, "as a general rule, when a prison term and community control are possible sentences for a particular felony offense, absent an express exception, the court must impose either a prison term or a community-control sanction or sanctions." This is because "the General Assembly intended prison and community-control sanctions as alternative sentences for a felony offense." *Id.* "Accordingly, 'a prison term and a no-contact order cannot be imposed on a defendant for the same offense * * *.'" *State v. Prince*, 9th Dist. Summit No. 27651, 2016-Ohio-4670, ¶ 23, quoting *State v. Clark,* 9th Dist. Summit No. 27511, 2016-Ohio-91, ¶ 19.

{¶42} Here, the trial court sentenced Mr. Cain to eight year's imprisonment on count three, felonious assault. Further, at the end of its Judgment of Conviction, the trial court also

ordered that Mr. Cain "shall have NO CONTACT whatsoever with [A.B.], the victim in this matter, either directly or indirectly." Pursuant to *Anderson*, the trial court erred by imposing both prison time, for the felonious assault, and a no-contact order in favor of A.B. Therefore, based upon our precedent, the no-contact portion of the judgment must be vacated. *See Prince* at ¶ 24; *see*, *also Clark* at ¶ 19.[3]

**{¶43}** Mr. Cain's fifth assignment of error is sustained, and this matter is remanded for further proceedings.

### Assignment of Error Number Six

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR AT THE SENTENCING HEARING BY FAILING TO COMPLY WITH R.C. 2929.19(B)(2)(F).

**{¶44}** In his sixth assignment of error, Mr. Cain argues that the trial court committed reversible and plain error at sentencing by failing to comply with R.C. 2929.19(B)(2)(f).

**{¶45}** R.C. 2929.19 (B)(2)(f) provides:

* * *

if the sentencing court determines at the sentencing hearing that a prison term is necessary or required, the court shall * * * [r]equire that the offender not ingest or be injected with a drug of abuse and submit to random drug testing as provided in section 341.26, 753.33, or 5120.63 of the Revised Code, whichever is applicable to the offender who is serving a prison term, and require that the results of the drug test administered under any of those sections indicate that the offender did not ingest or was not injected with a drug of abuse.

---

[3] Although we are bound by the Supreme Court of Ohio's ruling in *Anderson*, *supra*, and our precedent, we have noted the following procedure for victims regarding no-contact orders: "[a]lthough the trial court cannot impose a no-contact order in this instance, the victim[] [is] not left without any mechanism for blocking contact. We have noted that 'a victim may request in writing a cease and desist order from the penal institution, directing the inmate to stop inappropriate contact. *See* State of Ohio Department of Rehabilitation and Corrections Policy No. 03-OVS-1, eff. June 24, 2013, VI(A)(4)(a). Penal institutions may also establish rules prohibiting inmates from having contact with victims. *See* OAC 5120-9-06(C)(61).' *Clark* at ¶ 19, fn. 1, quoting *State v. Clayton*, 9th Dist. Summit No. 27515, 2015-Ohio-2499, ¶ 12, fn. 1.

**{¶46}** In *State v. Taylor*, 9th Dist. Summit No. 27867, 2016-Ohio-3439, ¶ 19, we reviewed this very issue, stating:

> This Court recently addressed an identical argument in *State v. Mavrakis,* 9th Dist. Summit No. 27457, 2015-Ohio-4902, ¶ 47. There, we held that a trial court's failure to comply with Section 2929.19(B)(2)(f) resulted in harmless error because these requirements are intended to facilitate the drug testing of prisoners, not to create substantive rights. *Id.* at ¶ 50, citing *State v. Culgan,* 9th Dist. Medina No. 09CA0060-M, 2010-Ohio-2992, ¶ 18. Consistent with our precedent, we reject Ms. Taylor's argument and overrule her assignment of error.

It is well-settled that "[a] harmless error 'does not affect substantial rights [and] shall be disregarded.'" *Mavrakis* at ¶ 49, quoting Crim.R. 52(A). "'Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.'" *Mavrakis* at ¶ 49, quoting Crim.R. 52(B).

**{¶47}** Here, like in *Taylor* and *Mavrakis*, the trial court did not advise Mr. Cain of the provisions set forth in 2929.19(B)(2)(f). However, based upon our precedent, this error is harmless. *See Taylor* at ¶ 19, *Mavrakis* at ¶ 50, and *Culgan* at ¶ 18.

**{¶48}** Mr. Cain's sixth assignment of error is overruled.

<u>Assignment of Error Number Seven</u>

MR. CAIN WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL COUNSEL FAILED TO ARGUE AT THE SENTENCING HEARING THAT THE TRIAL COURT FAILED TO COMPLY WITH R.C. 2929.19(B)(2)(F).

**{¶49}** In his seventh assignment of error, Mr. Cain argues that his trial counsel was ineffective for failing to argue at sentencing that the trial court did not comply with R.C. 2929.19(B)(2)(f). To prove ineffective assistance of counsel, Mr. Cain must establish that: "(1) [his] trial counsel's performance was deficient; and (2) but for counsel's deficient performance, there is a reasonable probability that the result of the trial would have been different." *Taylor* at ¶ 20, citing *Strickland v. Washington,* 466 U.S. 668, 687 (1984).

{¶50} Based upon our resolution of Mr. Cain's sixth assignment of error, that the trial court's failure to comply with R.C. 2929.19(B)(2)(f) resulted in harmless error, he "'cannot show the necessary prejudice required to support an ineffective assistance of counsel claim.'" *Taylor* at ¶ 20, quoting *State v. Blankenship,* 9th Dist. Summit No. 16019, 1993 WL 329962, *4 (Sept. 1, 1993); *see also Mavrakis*, 2015-Ohio-4902, at ¶ 54, quoting *Blankenship* at *4, ("We have already determined that the trial court's failure to comply with R.C. 2929.19(B)(2)(f) was harmless error. When an error is harmless, the appellant 'cannot show the necessary prejudice required to support an ineffective assistance of counsel claim.'")

{¶51} Mr. Cain's seventh assignment of error is overruled.

Assignment of Error Number Eight

THE CUMULATIVE EFFECT OF THE TRIAL COURT'S ERRORS DENIED MR. CAIN A FAIR TRIAL.

{¶52} In his eighth assignment of error, Mr. Cain argues that if this Court determines that his other assignments of error are harmless, then the cumulative effect doctrine should be applied in order to "grant him a new trial." Although, Mr. Cain cited to *State v. Thomas*, 9th Dist. Summit No. 27266, 2015-Ohio-2935, in support of this proposition, he failed to fully develop any type of argument for this Court's consideration.

{¶53} Pursuant to App.R. 16(A)(7), the brief of an appellant shall include "[a]n argument containing the contentions of the appellant * * * and the reasons in support of the contentions * * *." Where an appellant fails to develop an argument in support of his assignment of error, "we will not create one for him." *State v. Harmon,* 9th Dist. Summit No. 26426, 2013-Ohio-2319, ¶ 6, citing *Cardone v. Cardone,* 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998) ("If an argument exists that can support [an] assignment of error, it is not this [C]ourt's duty to root it out.").

**{¶54}** Further, "we have not found multiple instances of harmless error above." *See*

*Thomas* at ¶ 72.

**{¶55}** Mr. Cain's eighth assignment of error is overruled.

## III

**{¶56}** Mr. Cain's first, second, third, fourth, sixth, seventh and eighth assignments of

error are overruled. Mr. Cain's fifth assignment of error is sustained. The judgment of the

Summit County Court of Common Pleas is affirmed, in part, reversed, in part, and remanded for

further proceedings consistent with this decision.

Judgment affirmed, in part,
reversed, in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common

Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy

of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of

judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the

mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

BETH WHITMORE
FOR THE COURT

HENSAL, J.
<u>CONCUR.</u>

CARR, P. J.
<u>CONCURS IN JUDGMENT ONLY.</u>

<u>APPEARANCES:</u>

SHUBHRA N. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.